JOHN BEATY, PLAINTIFF IN ERROR *vs*. THE LESSEE OF A. KNOWLER AND OTHERS, DEFENDANT IN ERROR.

Ejectment. The defendant claimed the land in controversy under a tax sale, which was made by a company incorporated by the legislature of Connecticut, in 1796, called " The proprietors of the half million of acres of land lying south of lake Erie," and incorporated by an act of the legislature of Ohio, passed on the 15th of April 1803, by the name of " The proprietors of the half million of acres of land lying south of lake Erie, called the sufferers' land." In 1806 the legislature of Ohio imposed a land tax, and authorised the sale of the lands in the state for unpaid taxes, giving to the owners the right to redeem within one year after the determination of their minority. This act was in force in 1808. In 1808 the directors of the company, incorporated by the legislatures of Connecticut and Ohio, assessed two cents per acre on the lands of the company, for the payment of the tax laid by the state of Ohio, and authorised the sale of those lands on which the assessments were not paid. The lands purchased by the defendant were the property of minors at the time of the sale, they having been sold to pay the said assessments under the authority of the directors of the company. Held, that the sale of the land under which the defendant claimed was void.

The provisions in the act of incorporation of Ohio, that it should be considered a public act, must be regarded in courts ; and its enactments noticed without being specially pleaded, as would be necessary if the act were private. [167]

That a corporation is strictly limited to the exercise of those powers which are specifically conferred on it, will not be denied. The exercise of the corporate franchise, being restrictive of individual rights, cannot be extended beyond the letter and spirit of the act of incorporation. [168]

From a careful inspection of the whole act, it clearly appears that the incorporation of the company was designed to enable the proprietors to accomplish specific objects, and that no more power was given than was considered necessary to attain those objects. [171]

The words, " all-necessary expenses of the company," cannot be so construed to enlarge the power to tax, which is given for specific purposes. A tax by the state is not a necessary expense of the company, within the meaning of the act. Such an expense can only result from the action of the company in the exercise of its corporate powers. [171]

The provision in the tenth section, " that the directors shall have power to do whatever shall appear to them to be necessary and proper to be done for the well ordering of the interests of the proprietors, not contrary to the laws of the state," was not intended to give unlimited power, but the exercise of a discretion within the scope of the authority conferred. [171]

FROM the circuit court of Ohio.

This was an ejectment for lands in the state of Ohio; and on the trial in the circuit court the defendant excepted to the charge of the court, and prosecuted this writ of error.

[Beaty *vs.* The Lessee of Knowler.]

The facts are fully stated in the opinion of the court.

The case was argued by Mr J. C. Wright, for the plaintiff; and by Mr Vinton for the defendant.

Mr Wright contended, that the court below erred in their instruction to the jury.

1. In instructing the jury, that the directors of the company incorporated by the legislature of Connecticut in the year 1796, designated as the " the Proprietors of the half millions of acres of lands lying on the south of lake Erie," and by a law of Ohio passed the 15th of April 1830, had no legal authority to assess the tax on the land, for the non-payment of which it was sold.

2. That the proprietors of the land included in the provisions of the acts, who were minors, were not bound by the assessment of the tax, and the sale of the land.

He said the only questions which arose on the case are these; nothing else was excepted to on the trial.

Those instructions involve the construction of certain laws of Connecticut, and of the state of Ohio; which, in general, have received no interpretation from the courts in those states.

The correctness of the instructions will depend on the law of Ohio; that of Connecticut having been introduced to show the history of the transaction out of which this controversy has arisen. But as the company was organized under the law of Ohio, and in a manner entirely different from that of the law of Connecticut, and the tax was laid according to its provisions, that is to be put out of the question.

It was objected to the validity of the assessment of the tax, that the charter does not authorise the directors to assess a tax to pay that levied by the legislature of Ohio. It is conceded at once, that the power is not given in express terms, but is fully included in the several powers to assess a tax. Act of the 15th of April 1803, sec. 2.

The plain and obvious reading of this grant of power is, "to defray all necessary expenses of the said company in purchasing and extinguishing the Indian claims of title, surveying, locating, making partition of the land; and to defray

all other necessary expenses of said company, power is given," &c.

Two descriptions of powers are confided to the directors by this provision. The first relates to expenses necessary for specified objects; and the second is equally plenary to all purposes; " to defray the necessary expenses of the said, company."

This power is also included in the tenth section of the act, " to do whatever shall to them appear necessary and, proper for the well ordering and interest of the company, not contrary to the laws of the state.

If the directors, in the exercise of their discretion, thought the money to be raised by this assessment was proper to defray necessary expenses, or useful for the well ordering of the company, they had full power to lay the tax. It would be difficult to employ words to convey a more unlimited discretion to the directors; and their view in laying the tax is clearly developed in the vote.

" Voted unanimously that a tax of two cents on the pound be assessed to defray the expenses of a tax laid by the legislature of Ohio, &c. and all other necessary expenses for the good of the proprietors of the said land."

If the directors had power to assess the tax, then, 2. Were the infant lessors bound by the assessment?

It will hardly be contended that minors cannot in any event be clothed with powers as corporators; that is indisputable. The resolve of the state of Connecticut released and quit claimed to eighteen hundred individuals named in the act, the half million of acres, " and to their legal representatives where dead, and to their heirs and assigns for ever." Swan's Ohio Land Laws, 81 to 100. The ancestor of the lessors of the plaintiff was then alive, and one of the persons named in the resolve. He took an estate in fee as a tenant in common with all the others. In 1792 Connecticut constituted these grantees a corporation, and gave them, their heirs and assigns, succession as corporators; and provided that the expenses and taxes should only be a charge on the land. The ancestor of the plaintiff's lessors, with the other grantees, organized the corporation under this act, and partook of all the powers it conferred. By his death in 1800

the interest he held in the land devolved upon his heirs, subject to the corporation; and by the very terms of the charter they took his place as corporators, representing together in the corporation the interest their parent had represented alone. These heirs were owners and proprietors of their ancestor's share in the lands, when Ohio incorporated them with all " the owners and proprietors." This suit was brought in 1825 when all the heirs were probably of age, as the tax was laid in 1808.

Under the law, the lands were divided, and two thousand four hundred acres were set apart for the interest of Douglass, the ancestor of the lessors of the plaintiff. This division, the lessors recognize and ratify. They bring suit for a part of the allotment assigned to them in the division; and not for an undivided sixth of the two thousand four hundred acres, part of the five hundred thousand acres. They avail themselves of the act of incorporation, and yet claim they are not corporators, nor bound by the acts of the directors under it.

The adult, as well as the minor heirs, have all gone on as corporators. No dissent was ever expressed; but, on the contrary, all, as one, represent the share. If these minors are not bound by the acts of the corporation, all remains as at the death of their ancestor in 1808; and the partition must be gone into anew; and the separate allotment, under which the forest has disappeared, and the wilderness has been made to blossom as the rose, is all to be done away, and the lands thrown into common. Every thing in the country will thus be thrown into confusion.

Would this be just to the co-tenants? and yet it is the inevitable result of the principles given in the instructions to the jury.

Mr Vinton, for the defendant in error, contended,

1. That the lessors of the defendant in error were not parties to, or bound by said acts of incorporation.

2. That the directors under the Ohio act of incorporation had no power to assess a tax to pay a state tax of that state.

3. That the tax was void for uncertainty, it being assessed in part for undefined purposes.

4. That the sale being conducted contrary to the manner prescribed by the laws of Ohio, was void.

5. The sale was void, because the collector omitted to give the notice required by said act of incorporation of the time when the tax would become due.

It has been holden by this court, that a grant to a private corporation is a *contract;* and consequently, to bind the corporators, their assent, express or implied, must be had. Dartmouth College *vs.* Woodward, 4 Wheat. 659, 657, 682. Ellis *vs.* Marshall, 2 Mass. 275, 279.

It therefore becomes necessary to inquire if this is a private corporation ; and if so, whether the defendants in error had, by their assent, express or implied, made themselves parties to it. In 4 Wheat. 668, 669, public corporations are defined " to be such only as are founded by the government for *public purposes,* where the *whole interests* belong also to the government." This definition will test the character of the corporation in question. The entire interest of this corporation consisted of private property, and the purpose of the act was the regulation of that property for the benefit of the proprietors.

The government of Ohio had no interest in the corporation; nor did it seek to attain any purpose of its own by the act of incorporation. The declared objects of the act were, to enable the proprietors of the sufferers' lands, " to extinguish the Indian title ; to survey them into townships or otherwise, and make partition of them among themselves." These are all private purposes, intended for their own emolument and advantage. The corporation is therefore, in its nature, a private corporation. Here an inquiry arises as to the effect of the last section of the act of incorporation, which declares that act to be a public act. A similar enactment has been introduced into the bank charters of that state, which no one ever imagined to be public corporations on that account. The evident intention of this declaration is not to change the nature of the corporation ; but to relieve the corporators from the inconvenience of special pleading, and making proof of their corporate existence, according to the usages of the common law. To this extent the provision is politic and

reasonable; but to go beyond that, and give it the effect of making the corporation a public corporation, in the sense of the definition laid down, would be unreasonable, and according to the principles settled by this court in the Dartmouth College case, not in the power of the legislature of Ohio. 4 Wheat. 671, 672.

This brings us to the question of assent. No express assent by the defendants in error to this act of incorporation is pretended.

An implied assent is relied upon. Jonathan Douglass, the ancestor of the defendants in error, died in 1800. The act of incorporation, by the legislature of Ohio, was passed in 1803. And in 1808 the land in controversy was sold to pay a tax assessed under that act. At the time of the sale, four of the defendants in error were minors; and consequently not able in law to contract or assent to become corporators.

Assent, in such a case, is not one of the exceptions to the legal disabilities of infants. Lapse of time is relied upon to raise a presumption of assent; the common law fixes the period at which the presumption arises, at the end of twenty years; which had not elapsed when this suit was instituted. The counsel for the plaintiff in error has argued, that the present claimants took the estate of their ancestor as he left it; and has, on this ground, endeavoured to make out the power of the legislature of Ohio to bind them by its act; because the legislature of Connecticut had, in 1796, incorporated the proprietors of these lands to enable them to effect similar objects.

There is no proof that Jonathan Douglass ever gave his assent to the Connecticut act, and if he did, it has no connexion with the present case. The affairs of the Connecticut corporation were conducted by a board differently organized, and called by a different name from the board of directors which assessed the tax under which the land in controversy was sold. The proceedings now called in question were had under the act of Ohio. Douglass died in 1800, and it could not be one of the conditions on which his heirs inherited his estate that they should become parties to an act of incorporation that the state of Ohio, which then had

no being as a state, might pass three years after his death. Nor does it follow, that because the ancestor or his heirs were parties to one corporation, that therefore they were bound to become parties to a new and distinct corporation, created by another and independent authority. It has been urged upon the court that if this doctrine prevail, it will overturn a great amount of property; but that no more proves the fact of assent, than if it would only overturn a small amount. It has been further contended, that the suit now pending is predicated from the partition made by the directors under the Ohio act of incorporation, and consequently affirms their proceedings, and estops the defendants in error from denying the fact of their assent. No principle of law is better settled, than that one tenant in common may bring an ejectment against his companion to be let into possession. Every such tenant has a right to the common enjoyment of the whole and every part of the premises; and against all strangers, he has an exclusive right of possession to the whole and every part thereof. From this principle, it follows, as a necessary consequence, that he has a right to his possessory action against such stranger for the whole or any part of the premises. The suit then, against the plaintiff in error as a trespasser upon a specific part of this grant of the land, is no admission by the defendants of a partition; and consequently is no affirmance of the partition, if any was made by the directors; which the record does not show.

2. The second point denies the authority of the directors to assess the tax in question. In the case of Head vs. Providence Insurance Company, 2 Cranch. 167, 1 Condens. Rep. 371, the court say, that "a corporation may correctly be said to be precisely what the incorporating act has made it, to derive all its powers from that act, and to be capable of exerting its faculties only in the manner that act authorises;" and in 4 Wheat. 636, this court define a corporation in these words, " it is the mere creature of the law; and possesses only those properties, which the charter of its creation confers upon it, either expressly or as incidental to its very existence." Its powers are therefore to be construed strictly.

To determine the question of the power of the directors to assess the tax, it is necessary to look into the incorporating act, and to examine it in all its parts.

It is not pretended that the act confers an express grant of power to assess the tax. The inquiry then arises, was the power incidental to the existence of the corporation? A formal and specific enumeration of the purposes for which the corporation was created is set out in the preamble, and also in the second section of the act.

They are, "to extinguish the Indian title to the grant of a half million acres of land, to survey and locate the same into townships or otherwise, and to make partition among the proprietors." To effect these objects, and to defray all other necessary expenses of said company, power was given to the directors to levy taxes. Was the tax assessed by the state of Ohio, a company charge or expense? The tax of the state was a lien upon the estate of each tenant in common, which his companion was no more bound to pay, than he would be to discharge the lien of a judgment at law, or a mortgage of his co-tenant. The twenty-third section of the act of Ohio assessing the state tax, is conclusive of this point.

It enacts, that when any tract of land charged with tax, is owned by two or more persons, the collector shall receive from any person tendering the same, his or her proportion of the tax due thereon.

Under this provision of the act, any one of the proprietors might, by paying his proportion of the tax, discharge the lien of the state upon his estate. And his interest could no more be affected by the sale of the right of his companion for non-payment, than if that right were conveyed away by the companion himself, or sold to pay a judgment at law. The tax of the state then was not a company charge; nor was the payment of it by the company in any way necessary or incidental to the existence of the corporation. Again, was the aid of the corporation necessary to enable the state to collect its tax? The power of the state to collect its own taxes by its own agents, cannot be denied.

If, therefore, we find the state did create its own agents

for the collection of this tax, and put into their hands all the necessary means to discharge this duty, every presumption in favour of collecting it by the agents of the corporation is excluded. On looking into the tax law of Ohio, we find the tax covered all the lands in the state, the company's lands included; that agents were appointed to collect all the tax without any exception; for this purpose, the state was divided into collection districts, one of which embraced the land in controversy. The aid of the company, therefore, was not necessary to a perfect execution of the law of Ohio; and the means provided by the legislature for its execution excludes the idea, that it relied upon this corporation for any such assistance as it thought proper to volunteer.

But it has been insisted, that the tenth section of the act of incorporation confers upon the directors the power to assess a tax to pay a tax of the state. It empowers them, in general terms, to do whatever to them shall appear necessary and proper to be done for the well ordering and interest of the proprietors, not contrary to the laws of Ohio. This section contains no specific and substantive grant of power. It ought, therefore, to be construed to be a general grant of the means necessary and proper for the execution of the specified purposes of the act of incorporation.

So understood it does not in fact enlarge the powers of the corporation, and seems to have been introduced into the act from abundant caution.

3. Before the examination of the remaining points, it may be proper to notice an objection that has been urged by the opposing counsel. It is insisted that we are not at liberty to present either of these points to the court; because they do not form part of the opinion of the court below, to which exceptions were taken at the trial. The objection is predicated from the supposition, that the writ of error was sued out to reverse the *opinion* of the court, instead of the judgment itself. The writ covers the whole record; and if it shall appear from an inspection of it, that there is no error in the judgment, it cannot be reversed, whatever may be the errors in the opinion of the court.

The record sets out the proof of the title of the plaintiffs

below. It is a perfect title. The title of the defendant below, as proved by him, is also spread upon the record. If that title is defective, it cannot avail him against the perfect title of his opponents. We are therefore at liberty to examine that title as it appears on the record.

The third objection then is, that the tax was void, being assessed in part for undefined purposes. The objects of the tax are declared in the resolution of assessment to be " to defray the expenses of a tax laid by the state of Ohio, and other necessary expenses for the good of the proprietors of the said land." The taxing power of the corporation is limited to certain purposes specified in the incorporating act, which would doubtless include the means necessary and proper for the full attainment of those purposes. It must be exercised within those limits; and in such a manner, that it can be known with certainty whether they have been exceeded. If otherwise, its assumptions of power could neither be detected nor controlled. For example, let it be conceded that the corporation had no power to assess a tax to pay a tax of the state; is it not apparent that a tax for that purpose might be assessed under the vague terms " for the good of the proprietors !" The undefined portion of the tax must therefore be void.

The tax is one entire and indivisible thing; and if void for part, it must be for the whole. It cannot be ascertained how much of the land in controversy, if any part of the tax was authorised, was sold to pay the valid, and how much the invalid portion of the tax.

4. The sale was contrary to the laws of Ohio. By the tenth section of the act of incorporation the directors were restrained from doing those things that were contrary to the laws of the state. The collectors of the state tax were required to reside in their collection districts, to give bond and security to the state for the faithful collection and paying over the tax to the state treasurer. The sale and collection in this case was made by a company collector, residing in a distant state; who gave no bond to the state, nor was in any manner accountable to it. The sale was made without the reservation of the right of redemption, which the law of

Ohio secured to infants, and to others labouring under legal disabilities. The collector for the corporation exacted fees and charges not allowed by the laws of Ohio; and thus increased the amount of the tax beyond what the state collector was authorised to receive.

In all these particulars, and others that might be enumerated, the sale was contrary to the settled law and policy of Ohio, and therefore vicious.

5. Admitting the corporation had the power to assess and collect the tax in question; still in making the collection the company's collector did not conform to all the requisites prescribed to him by the act of incorporation. That act requires the collector to give notice of *the time when the tax became due*, by advertising the same for at least three weeks in a newspaper published in each of the counties of New Haven, Fairfield, and New London, in the state of Connecticut. If the tax was not then paid, the collector was required to make another and further publication of the time and place of sale, for default of payment.

The record shows an advertisement of sale, for non-payment; but does not show that proof was made of an advertisement of the time *when the tax became due*. The cases of Williams *vs.* Peyton, 4 Wheat. 79, 83, and of Parker *vs.* Rule's Lessee, 9 Cranch, 64, are expressly in point; and they show conclusively, that the advertisement cannot be presumed in the absence of proof; and that its omission is a fatal irregularity.

Mr Wright, in reply, contended; that the provisions of the law of Ohio under which the tax was assessed, laid the tax on the whole body of the lands owned by the eighteen hundred persons. It was a common charge on the whole lands, which at the time were held by the proprietors undivided. It was consequently a *necessary expense* upon the company for which the directors were authorised to provide, by the assessment of a tax. The law of Ohio looked to the land for the tax, and required the collectors to sell for the collection of it; and for the tax due on an entire undivided tract, an entire portion of the whole was directed to be sold. An

attempt to sell in parcels, would be to make a partition among the proprietors. No one could pay his own tax and preserve his own share, because he owned no specific part: his joint interest would be more or less prejudiced, if any sale for taxes of the entire tract took place.

He proceeded to show, by a reference to the law of Ohio laying the tax, further difficulties which would have attended the sale of part of the whole body of the land for the tax; and he argued that the payment of the tax by the directors was necessary to preserve the lands of the company.

It is said, the tenth section of the act of incorporation confers no power to tax. That section was intended to give some power, and it authorises that to be done which is "necessary and proper for the well ordering and interests of the owners and proprietors." These terms fully comprehend the power, and authorised the doing of that which would save the property from sale under the state law.

It is objected that the assessment is *void* for uncertainty, being in part for undefined purposes. It was for the Ohio tax, and other necessary expenses for the good of the proprietors of the land. While it is admitted that it ought to have mentioned the objects, it is denied that it was required that they should be specified. Were they for the general interests, and for the general good? This has not been denied.

In the act of incorporation there is no reservation in favour of minors. In the general law, minors are allowed to redeem in a year after attaining adult years. In what manner? Not by treating the sale as void, but by paying the tax, interest and penalties, and for the improvements. These requisites suppose the sale valid.

But the question before the court is one of power, not of policy. The omission of the legislature to make a politic provision concerning the rights of minors, does not deny the right; on the contrary, it admits the power. It cannot be maintained that this affects the validity of the sale. All the incapacities, and all the privileges of minors are the mere creatures of municipal law. The state of minority itself is created and regulated by that law, and the period of its duration varies in different states.

The act of incorporation of Ohio operated upon adults and on minors alike. No distinction is made in respect to their rights. The courts cannot originate such distinctions.

No authorities have been adduced in support of our positions. They are supposed to rest on principles familiar to the profession. Their application to the case before the court cannot be tested by precedent, for the whole case is one *sui generis.* The analogies illustrative of their application, result more directly from the principles themselves than from adjudged cases'; which can bear but remotely upon an insulated controversy. Cited, Knowler, Douglass and others *vs.* Coit, 1 Ohio Rep. 519.

Mr Justice M'LEAN delivered the opinion of the Court.

This was an action of ejectment, brought in the circuit court of Ohio, to recover possession of one thousand two hundred acres of land, parcel of two thousand four hundred acres, in what is called the Connecticut reserve.

On the trial below, it was agreed, that Jonathan Douglas, the ancestor of the plaintiff's lessors, became proprietor of the premises in question, in May 1792, under the laws of Connecticut, granting lands to certain sufferers, and died the 6th of March 1800, vested with the legal title ; which he held in common with many other proprietors, the land not being set apart, or apportioned to any one of the whole. That the lessors of the plaintiff were his heirs at law, and held as partners or tenants in common.

On the trial it was proved by the plaintiff below, that on the 5th of May 1808, four of the lessors were minors.

The defendant set up a title under a tax sale, which was made by the company incorporated for the management of said lands.

This company was first incorporated by the Connecticut legislature, in the year 1796. No person is named in the act ; but the corporators are designated, as the " proprietors of the half million of acres of land lying south of lake Erie." Under this law the corporation was organized. In 1797, the Connecticut legislature passed an amendment to this law.

[Beaty *vs.* The Lessee of Knowler.]

On the 15th of April 1803, the legislature of Ohio passed an act incorporating those owners and proprietors, by the name of " the proprietors of the half million of acres of land lying south of lake Erie, called sufferers' land ;" and by that name gave succession to them, their heirs and assigns.

This was called the sufferers' land, from the circumstance of its having been given by the state of Connecticut to indemnify the losses its citizens had sustained in the revolutionary war.

The act of incorporation by the legislature of Ohio required nine directors to be appointed, who were authorised to hold their meetings out of the state. In the second section, power is given to the directors to extinguish the Indian title; to survey the land into townships, or otherwise to make partition, as they should order, among the owners, in proportion to the amount of loss : and amongst other things, the act provided, " that to defray all necessary expenses of said company, in purchasing and in extinguishing the Indian claim of title to the land, surveying, locating, and making partition thereof, as aforesaid, and all other necessary expenses of said company, power be, and the same is hereby given to, and vested in the said directors and their successors in office, to levy a tax or taxes (two-thirds of the directors present agreeing thereto,) on said land, and have power to enforce the collection thereof."

The ninth section provides, " that all sales of rights, or parts of rights, of any owner or proprietor in said half million acres of land, made by the collector, shall be good and valid, so as to secure an absolute title in the purchaser ; unless the said owner and proprietor shall redeem the same within six calendar months next after the sale thereof, by paying the taxes for which the said right or rights, or parts thereof, had been sold, with twelve per cent. interest thereon, and costs of suit." The act contains no provision in favour of the rights of infants or femes covert.

By the tenth section of this law it is provided, " that said directors shall have power and authority, and the same is hereby given to them and their successors, to do whatever shall to them appear necessary and proper to be done, for

the well ordering and interest of said owners and proprietors, not contrary to the laws of the state." The eleventh directs that "supplies of money which shall remain in the hands of the treasurer, after the Indian title shall be extinguished, and said land located, and partition thereof made, shall be used by said directors for the laying out and improving the public road in said tract, as this assembly shall direct." The act is declared to be a public one in the twelfth section.

An act imposing a land tax was passed by the Ohio legislature in 1806, which remained in force in 1808. This act required entry to be made of lands for taxation. A perpetual lien was imposed on the land, whether entered or not, for the amount of the tax, and minors had a right to redeem their land sold for taxes, within one year after their minority expired. It appeared in proof, at the trial, that at a meeting of the directors of the company convened at the court house in New Haven, on Thursday the 5th of May 1808, agreeably to a notification duly issued according to the ordinances of said directors; it was unanimously voted by six directors, being all that were present, that a tax of two cents on the pound, original loss, be assessed on the original rights or losses, in said half million acres of land, to be paid by each proprietor thereof, in proportion to each person's respective share or loss, as set in the grant of said lands made by the state of Connecticut; to be collected and paid by the several collectors to the treasurer of this company, on or before the 1st of July 1808, to defray the expenses of a tax laid by the legislature of the state of Ohio, and other necessary expenses, for the good of the proprietors of said land.

The defendant gave in evidence the assessment of a tax upon the rights of the said Jonathan Douglas, the appointment of a collector, the issuing of a warrant of collection, the advertisement of sale for taxes, the sale of a part of the right of said Douglas, amounting to twelve hundred acres, for taxes, to Elias Perkins, who conveyed the tract to the defendant.

The circuit court instructed the jury, that the directors had no power to assess said tax. And that the infant lessors were

not concluded or bound by such assessment.   To these in- . stru_tions the defendant excepted.  The jury found a verdict of guilty, and judgment was rendered thereon.

A reversal of this judgment is prayed for by the plaintiff in error, on the following grounds :

1.  The court erred in their instruction to the jury, that the directors had no legal authority to assess the tax :

2.  That the minor proprietors were not bound and concluded by the assessment and sale.

It is not contended in this case, that this company could derive corporate powers to do any act in Ohio, in relation to the sufferers' land, under the statute of Connecticut.  All their powers must be derived from the law of Ohio.   This law, it is insisted, is a private act, not designed for public purposes, and consequently cannot affect the rights of any individual who did not assent to its provisions.   That the provision declaring it to be a public act, does not alter the principle ; for the rights derived under it are of a private nature, being limited to those who have an interest in the land ; and it is denied, that any evidence of assent has been shown by the lessors of the plaintiff or their ancestor.

Several authorities were cited, as having a bearing upon the objections thus stated.   The names of the sufferers are published in the Connecticut act or resolution in 1792, with the amount allowed to each, as his indemnity for losses sustained.   In this act is found the name of the ancestor of the lessors of the plaintiff.   His right descended to them, subject to the same conditions by which it was originally held.

The provision of the law of incorporation, that it should be considered a publict act, must be regarded in courts of justice, and its enactments noticed, without being specially pleaded ; as would be necessary, if the act were private.  .

That a private act of incorporation cannot affect the rights of individuals who do not assent to it, and that in this respect it is considered in the light of a contract, is a position too clear to admit of controversy.  But, in the present case, this objection seems not to have been made in the court below ; where proof of the assent, if necessary, might have been submitted to the jury.

From the nature of the right asserted, and the circumstances under which it was originated, this court cannot doubt that the assent of the proprietors may be fairly presumed both to the act of Connecticut and to that of Ohio. Rights have been protected and regulated under those laws, and to the provisions of the latter are the claimants indebted, in a great degree, for the present value of the remainder of the land, which they still hold; and, as has been well argued, if they participate in the benefits of the law, they can set up no exemption from its penalties.

The main question in the case is, whether the directors have the power, under the act of incorporation, to assess a tax on each proprietor's share, to pay a tax to the state. That a corporation is strictly limited to the exercise of those powers, which are specifically conferred on it, will not be denied. The exercise of the corporate franchise, being restrictive of individual rights, cannot be extended beyond the letter and spirit of the act of incorporation. In the second section of the act, power is given to the directors to extinguish the Indian title, under the authority of the United States, when obtained; to survey and locate the land into townships, or otherwise to make partition; and to defray all necessary expenses in carrying these objects into effect; and to meet these and "all other necessary expenses of said company," the directors are authorised to levy a tax or taxes on said land, and to enforce the collection thereof. As the power to tax for the purpose of paying a tax to the state, is not found among the enumerated powers of the directors, it must be derived, if it exist, under the words, "all other necessary expenses of said company;" or under the tenth section, which provides, that "the directors shall have power to do whatever to them shall appear necessary and proper to be done, for the well ordering and interest of the proprietors, not contrary to the laws of the state." In favour of this construction, it has been ingeniously argued, that partition not having been made of the land, it could not be entered for taxation as required by the law of the state. That the half million of acres must be entered on the duplicate of the collector as one tract, and that it would be

impracticable for the collector to ascertain and collect from each proprietor his just proportion of the tax. That many of the proprietors are non-residents, and that any proportion of them, being desirous of paying their part of the tax, would not be discharged by doing so ; as a part of the entire tract, involving their interests, would be liable to be sold for any balance of the tax which remained unpaid.

Whether partition was made of the land, when the directors assessed the tax, does not appear, nor is it considered a fact of much importance in the case. No argument drawn from convenience, can enlarge the powers of the corporation. Was the tax imposed a "necessary expense of said company," within the meaning of the act ?

That these words would cover the expense of necessary agents to assess and collect a tax legitimately imposed by the directors, is clear, and also other incidental expenses, arising from carrying into effect the powers expressly given ; but do they invest the directors with a new and substantive power ? If they do, how is the exercise of the power to be limited ? Must it depend upon the discretion of the directors, to determine all necessary expenses of the company.

Ample provisions are found in the state law imposing a land tax, for the assessment and collection of the tax. A lien is held on all the taxable land in the state, whether entered for taxation or not ; and if the tax should not be paid by a time specified, the collector was authorised, after giving notice, to sell the smallest part of the tract, which would bring the amount of the tax.

For the convenience of non-residents, district collectors were appointed, who were required to hold their offices at places named in the act. The collector for the district including the sufferers' land, held his office at Warren, within what is called the reservation of Connecticut.

The law imposing the tax operates upon the land in controversy, and raises a lien ; the same as on any other taxable lands in the state.

It appears, therefore, that it was not the intention of the legislature to look to the corporation for the payment of the tax assessed under the law, but to the land, as in all

other cases. And if any part of the land had been sold by the state, in which minors had an interest, under the law, they had a right to redeem it within a year after they became of age. This is an important provision, and is not contained in the act of incorporation.

The agents of the state were paid for their services out of the tax collected; those of the corporation by the company. It would seem, therefore, that the tax collected by the state would be less expensive to the proprietors, than if collected by their own agents; and less hazardous to their rights, as the interests of minors were protected. If, therefore, the argument drawn from convenience could have any influence, it could not operate favourably to the power of the directors.

The power to impose a tax on real estate, and to sell it where there is a failure to pay the tax, is a high prerogative, and should never be exercised where the right is doubtful.

In the preamble to the Ohio act of incorporation, there is a reference to the Connecticut act, and to the cession of the reserve, by that state, to the union; and a statement that it was annexed to the state of Ohio. And as a reason for the passage of the act, it is stated, that said " half million of acres of land are now within the limits of Trumble county in said state, and are still subject to Indian claims of title ; wherefore, to enable the owners and proprietors of said half million acres of land, to purchase and extinguish the Indian claim of title to the same, (under the authority of the United States, when the same shall be obtained,) to survey and locate the said land, and to make partition thereof to and among said owners and proprietors, in proportion to the amount of losses, which is or shall be by them respectively owned," &c. These are the objects to be accomplished by the act of incorporation, and which could not be attained by the individual efforts of the proprietors. In the eleventh section of the act it is provided, " that supplies of money which shall remain in the hands of the treasurer, after the Indian title shall be extinguished, and said land located and partition thereof made, shall be used by said directors for the laying out and

improving the public roads in said tract, as the legislature should direct."

From a careful inspection of the whole act, it clearly appears that the incorporation of the company was designed to enable the proprietors to accomplish specific objects, and that no more power was given than was considered necessary to attain these objects.

The words " all necessary expenses of the company" cannot be so construed as to enlarge the power to tax, which is given for specific purposes. A tax to the state is not a necessary expense of the company, within the meaning of the act. Such an expense can only result from the action of the company in the exercise of its corporate powers.

The provision in the tenth section, that the " directors shall have power to do whatever shall appear to them to be necessary and proper to be done, for the well ordering of the interest of the proprietors, not contrary to the laws of the state;" was not intended to give unlimited power, but the exercise of a discretion, within the scope of the authority conferred.

If the words of this section are not to be restricted by the other provisions of the statute, but to be considered according to their literal import, they would vest in the directors a power over the land, only limited by their discretion. They could dispose of the land and vest the proceeds in any manner which they might suppose would advance the interest of the proprietors. It is only necessary to state this consequence, to show the danger of such a construction. The restrictions imposed, in other parts of the statute, very clearly demonstrate, that it was not the intention of the legislature to invest the directors with such a power. Upon a full view of the various provisions of the act of incorporation, the court do not find a power given to the directors to assess a tax, as has been done, in the case under consideration, to pay a tax to the state. The judgment of the circuit court must, therefore, be affirmed with costs.