Baldwin, Justice.
(Dissenting.) — I consider the directors of a bank, as its chartered agents ; and the bank as bound by their acts, when they are within the powers, and are exercised on the subjects, and in the manner authorized by the charter. 12 Wheat. 52, 53, 58, 83, 87. Shankland v. Corporation of Washington, decided at this term. If a corporation is authorized to raise money by a lottery, their agents cannot sell it (12 Wheat. 55); if to laise a specific sum, they cannot raise a quarter. Lee v. Manchester Canal, 11 East 645, 654. Every act of fraud, departure from their duty, of any other illegal act, committed by the directors of a bank, or the cashier, by their connivance *« 1 and permission, however ^sanctioned by the uniform usage of the -I board, is an excess of power and void from illegality. 1 Pet. 71, 72. The directors are liable individually ; but the bank cannot be bound by their doing that which they had no lawful power to do, or which was a violation of some duty enjoined by the charter, or resulting from the nature and objects of the incorporation; for the directors are not then their agents. A corporation is strictly limited to the exercise of those powers which are specifically conferred on it. 4 Pet. 168 ; 2 Dow P. C. 521, &c. The directors own none of the property or funds of the bank. They are trustees for the stockholders and creditors. Their control over the effects is entirely fiduciary and confidential; deriving their power over them by the act of incorporation, they must execute it according to its provisions and directions; which are in their nature creative, and not merely restrictive, inherent powers. If the act of incorporation is their only authority, they must act within its precise terms. 2 Dow P. C. 253. By section 13th of the charter, they may manage the funds, in the common course of banking, for the use and benefit of the stockholders ; but for any fraud, are liable to an indictment, a suit by the bank for the damages sustained, or forfeiture of their stock. If they manage them in any other way, they do it on their own individual responsibility, not on that of the bank, as its authorized agents; if misapplied funds of the corporation come to the hands of innocent third persons, they cannot be recovered back. But if the directors make a contract which contains stipulations exceeding their authority, it cannot be enforced against the bank, by the party contracting with them. By the act of contracting with the agents and trustees of a corporation, the party is presumed and bound to know the nature, extent and the legitimate objects of their authority, according to the terms of the charter; and necessarily contract subject to them.
The 12th section of the law of Maryland, ch. 32, December 1813, chartering the Bank of Somerset, enacts that, “no member of said company shall be answerable in his personal or individual property, for any contract or engagement of said bank, or for any losses, deficiencies or failures thereof, or oaPital ^00-^ thereof ; but all the capital stock, together *with -* all its property, rights and credits of the said institution shall at all times be answerable for demands against said bank.”
At, or as near the date of the bond as could be ascertained, according to the statement given in evidence by the plaintiffs, the bank owed the creditors $130,000; whereof there was due to the holders of notes, $15,000; to individual *429 depositors, $46,000 ; and to the United States, $69,000. The whole property and effects of the bank amounted to $113,000 ; of which $60,000 appear to be lost by insolvencies. The state of the bank, in May 1820, shows on its face, a deficit of $21,000, short of the debts. With this law and statement of the bank before them, the plaintiffs and the directors entered into the agreement of the 15th of July 1820 ; by which the entire estate of the corporation was pledged to the United States, for the payment of their debt of $69,000 ; and they were to have a preference over every other creditor of the bank. They were entitled to no such preference by law ;■ and unless tbe agreement of the directors gave it' to them, under their authority as agents of the bank, they cannot enforce it. The power and right of an individual to prefer one creditor to another, is undoubted ; not because any law confers that right upon him, but being the owner, and having full power of disposing of it as he pleases among his creditors, or to sell it for money, the distribution or payment of it, at his pleasure, among them, results from his ownership ; and no law has prohibited or restrained him. But, to my mind, an agent or trustee of a banking corporation is in a different situation ; he has no rights of individual ownership ; his control over the effects is solely derived from the law ; regulated and controlled by it, in any application he may make of it. The moment he exceeds his chartered powers, or violates his duty as prescribed by law, all privity between him and the bank ceases ; he is no longer their agent; and his acts are no longer theirs. Conceding the rule to be, that in a contest between creditors, at the counter of a bank, the note or check first presented, may be first paid by the cashier; it cannot, in my opinion, apply to real estate, or unavailable effects ; which require time and legal process for their collection ; and which *the charter declares, ri. shall be at all times answerable for demands against the bank. Direct- *- ors have no inherent right in the property, or control over it, resulting from ownership, which gives them the power of individual debtors to give creditors a preference. The charter gives them none.' Their authority must then be implied, either from the general scope and objects of the incorporation, or be incident to the agents and trustees of all moneyed and other corporations, in a case of known and ascertained deficiency to pay its corporate debts. If there is in the statute or common law of Maryland, or of any state in this Union, such a principle, it is wholly unknown to me. If, instead of delaring a pre-existing rule, a new one is adopted, from reasons of supposed analogy, justice or inconvenience, I cannot withhold my dissent to its adoption ; for I can perceive no reason which permits preferences by individuals, which do not, instead of authorizing, forbid the application of the rule to the trustees of the corporation ; nor can I perceive the justice of preferring one note-holder or one depositor to another. It would seem to me a justice unknown to the common law, to apply all the effects of an insolvent corporation to the debt of the government, and strip individuals. In such a case, the rule that equality is equity, would seem a very appropriate one. An equal distribution of all the effects among all the creditors, would certainly not operate unjustly. I can apply no other rule to this case, in the absence of any provision in the charter, or common-law authority, to the contrary.
An agreement like the present, made by an executor or trustee, under a deed or will, by an administrator or guardian, would be an excess or abuse of power. Creditors excluded by the agreement, would have their remedy *430 on the fund. Yet, in all these cases, the trustee has an interest in and control over the property intrusted to him, at least equal to that of the bank directors, in and over the effects of the corporation. If the giving a preference to one, and excluding all other creditors, would not be deemed a fair execution of the powers of the former classes of trustees, it is difficult to assign the reasons, which, on settled principles of law, would confer on the trustees of a corporation, an extent of authority unknown to any private * 01 trustees. A power given by will, deed or assignment, *to a trustee, ‘ to sell property to pay the debts of the party executing it, would not be well executed by such an agreement and bond as this ; nor can it be a compliance with the clear direction of the twelfth section of the charter ; the express words of it import a different meaning. The whole capital stock, property, rights and credits of the bank are answerable for demands upon it. They are thus pledged alike to all. While the demand is unsatisfied, the pledge is unredeemed, and directly violated, if the whole fund is appropriated to the demand of a favorite. It cannot be pretended, that the appropriation of the whole fund to the United States exonerates the bank from their obligation to pay the $60,000 due to individuals ; their demands are not extinguished thereby, but remain in full force, after all the corporate effects are disposed of. And this becomes the situation of the parties : the private creditors have just and legal demands against the bank, arising from a dejDosit of their money ; the United States have a demand of the same kind; the bank is bound to pay both, if its property and effects are sufficient; but its effective means fall short of either debt. The 13th section expressly releases the members of the company, exempts their persons and property from all liability for the contracts and engagements of the bank, or losses, deficiencies and failure of the capital stock; thus making the capital stock the only fund for payment. Two creditors, then, having debts contracted in the same way, have by law a pledge of the whole estate and effects for their security. The trustees of the fund apply the whole to one creditor ; the other receives nothing. All the losses are thrown on him ; he has a right to a judgment against the bank, as his debtor ; but can take neither their property nor effects, and the law prohibits him from resorting to any individual member of the comj>any. I cannot consider this as anything short of a palpable perversion of the corporate powers of the directors, by depriving innocent individuals of every possible remedy for the clearest possible right.
If it is said, that the directors are answerable individually to the injured creditors ; that could only be on the legal result of the acts done by them ; for, if they act within their chartered authority, they are mere agents of the bank ; and as such, expressly exempted from all personal responsibility. It *670] on^T *by an excess or abuse of their authority, that they cease to J be agents, and act at their individual peril; and it follows, necessarily, that in so doing, their acts are void as to the bank, and cannot operate as a corporate transfer of corporate property, to one who is a party to an unauthorized transaction.
If the charter gives power to apply the corporate effects to one creditor only, when it is unable to pay all, the directors have the same power to prefer one stockholder, after the debts are paid ; and in either case, might prefer themselves. Stockholders, debtors to the bank, might apply their *431 totes to the reimbursement of their capital paid in ; throw all the losses on those stockholders who had borrowed no money, and on whose funds the operations of the bank had been carried on. The directors themselves, and the preferred debtors of the corporation, would thus receive back their whole stock, while the creditor stockholders lose all theirs.
When the debts of a bank, due to the holders of their paper, or their customers, are paid ; stockholders, being creditors, are entitled to payment of their demands. The 13th section directs the directors to manage the funds, “for the use and benefit of the stockholders and the 12th pledges them for all demands upon the bank. After the out-of-doors debts are paid, the claims of stockholders are as sacred as those of depositors were before payment; and any acts of the directors, not strictly authorized by these sections of the charter, are inoperative and void, as well against the bank as against those who are creditors by holding their notes, or depositors or stockholders.
The charter of any corporation is the only source of its powers, and the only authority by which any can be exercised ; it is opposed to all sound rules of construction, to consider that which confers, as merely restraining and controlling powers, incident to the incorporation ; and therefore, to be constructed strictly as a limitation or exception to powers which pre-existed, or necessarily resulted from it; as is the power to make by-laws, to sue and be sued, &c. The power to manage, control and dispose of the corporate property, is a special authority given by the charter. None can be exercised which is not explicitly granted ; and it can only be exercised on the precise subjects over which it is given, and within the ^limits definitively r assigned. No charter ever gave a right of preference of one creditor >• of the corporation to the exclusion of all others ; none ever authorized a transfer of all its property, as this assignment does ; and those who claim a right under it are bound to show, affirmatively, the authority of the directors to do so, by the terms of the charter. The injured creditors are not bound to show a negative of the power, by any restrictions or prohibitions. It is an universal principle, that he who claims under a special authority must show its existence and lawful exercise ; to throw the burden of proof on the party whose rights will be destroyed by its abuse, would be the utter reversal of every rule which governs the execution of powers. The charter expressly pledges the whole property of the bank to the payment of the demands upon it. The creditor who claims the whole, by the act of the directors, the agents of the bank, and the trustees for all creditors and stockholders, must, especially when plaintiff, clearly make out their power to give him the preference. The absence of a restriction is no evidence of the grant of the power. The general pledge for all demands can only be dispensed with, by express power to transfer that pledge to the satisfaction of one, by withdrawing it from all others. This rule clearly results from the cases before cited, and is clearly established in those which folkw. An act of parliament authorized the directors of an incorporated company, in order to raise money by loan, and secure its repayment, to give a mortgage of their tolls : it was held, not to empower them to mortgage their toll houses ; and they are not estopped by their deed from denying their power, 2 T„ R. 171.. Where a mortgage was given, pursuant to a similar act of parliament, in order to secure their loans to one creditor of the company. *432 contrary to the provisions of the act prohibiting a preference, it was declared, that he was a bailee for all others who loaned their money under the authority of the act, that they should receive their due proportion. Banks v. Booth, 2 Bos. & Pul. 222. Where tolls were granted to a company, to reimburse them for money subscribed to a canal, they cannot diminish their rate, or make their rate unequal, by giving a preference to one person, using *679] transportation, over *another (Lees v. Manchester Canal, 11 East 656); or reduce tolls at one gate and not at all. King v. Bury, 4 Barn. & Cres. 361.
The principle of these cases applies to this ; the second is much stronger. The thing mortgaged was only the profits ; the property from which they were to accrue remained in fee to the company, subject to the payment of the loan. The preference given by a mortgage to one lender, was only as to the time of payment; and did not diminish the security of the lenders. Both cases show the great strictness in which the powers of a corporation must be exercised. The case of canal tolls seems conclusive, so far as any decision of the court of king’s bench can be, to show that an agreement to give a customer a preference in a reduced rate of toll is void, as an excess of the corporate powers of the directors. An agreement to transfer the whole property of the corporation to one creditor, or stockholder, would not have been enforced in Westminster Hall.
“ No argument drawn from convenience can enlarge the powers of a corporation.” 4 Pet. 169. “A general authority in the charter, that the directors shall have power to do whatever shall appear to them necessary and proper to be done, for the well-ordering of the interest of the proprietors, not contrary to the laws of the state;” was not intended to give unlimited power; but the exorcise of a discretion within the scope of the authority conferred. 4 Pet. 171. Such -words are restricted by the other provisions of the charter. Ibid.
Construing the one to the Bank of Somerset, by rules so well settled, I cannot consider the agreement in question to be within the legitimate powers of the directors. In the case of Slee v. Bloom, 19 Johns. 456, 477, the court of errors decided, with only one senator dissenting, that a resolution of the board of directors of a manufacturing company, giving the stockholders the privilege of forfeiting their shares, on paying thirty per cent., “ was utterly inoperative, against the fundamental principles of law and equity; legally fraudulent, and therefore, void and inoperative,” because a debt due to an only creditor would have been only partially paid, by depriving him of his *673] only means °f satisfation by a resort to the stockholders *ratably ’ -* until his debt was paid. The agreement in this case produced a worse effect, as it cut off a class of creditors to the amount of $60,000 from the hope of a dividend.
If the directors have this power of preference among the holders of their notes, depositors and stockholders, it must be as incidental, not only to all banking, but other insolvent corporations ; if incidental to corporate trustees, it must be applied to those who act under individual authority, to hold the trust fund answerable for demands or debts due by the person giving the directions to manage and dispose of it, for his use and benefit. I must dissent from the adoption of these principles, which my judgment tells me forms no part of the common law.
*433 If this were the ease of a bank, solvent but embarrassed, requiring only time to wind up its concerns, and the preference given to the United States were only as to time, the question would assume but little importance ; but in this case, the insolvency was apparent on the statement of the general account of the bank. There could have been no possible hope of retrieving its affairs, with debts to the amount of $130,000, with not one dollar in their vaults, and an admitted deficit of $21,000. It is evident, that the continuance of their corporate functions, after May 1820, was not to carry on banking operations, for they had no means whatever to do it. The only possible object was to collect from the wreck what could be saved. The preference, therefore, given to the United States, could operate in no other manner than as a final extinction of all hope to the private depositors and note-holders, by throwing on them alone the loss arising from the deficiency of the funds. This, I think, was wholly unauthorized by the charter, and directly opposed to its spirit and meaning; that it was an abuse of their trust, which a court of law would not enforce, and equity would restrain. Whenever a court of chancery interferes in cases of trusts, they make no discrimination between individuals and a corporation ; “ a corporation being a trustee, is in this court the same as an individual.” 2 Ves. jr. 46-7 ; 14 Ves. 252-3. If they misapply trust revenues, and by'misbehavior are unable to pay moneys due by them, chancery will take the estate out of their hands. Coventry Case, 7 Bro. P. C. *235. So, if they mis-spend or misapply trust money, r... 2 T. R. 200, 204; or as trustees, having the management of a pro- ' ductive fund, abuse their trust, 14 Ves. jr. 252-3 ; pledge corporate property for purposes not corporate, 1 Ves. & B. 242 ; deprive, by a by-law, one member of the company of his share of the profits, 1 Ves. jr. 316, 322 (where the chancellor examines fully the jurisdiction of the court over corporate trusts); or if the twelve jurymen of a manor court should make a by-law, that the next year’s profits should be divided among themselves exclusively, 17 Ves. 321.
Thus believing that where property is devised or assigned to trustees to pay debts, the law of all courts is perfectly well settled, that the trustee has no power to pay one, in exclusion of another creditor, where the fund is not sufficient to pay all; finding that by the best-established principles of courts of chancery, corporate trusts are within their jurisdiction, and to be exercised by the same rules which control the execution of individual trusts; seing no authority in the charter for the directors of this bank to make the agreement which is the subject of this suit; and utterly unable to discriminate between the powers and duties of a private or corporate trustee ; I must, though standing alone, record my decided dissent from the doctrine settled by the decision of the court in this case.
Though this point has not been made by counsel, nor noticed in the opinion of the court, it necessarily arises on the record ; it enters into the very vitals of the cause ; its merits cannot be settled, without a direct decision upon it; and thinking that the affirmance of the agreement to appropriate the whole effects of the bank exclusively to the United States, establishes, by the high authority of this court, a general principle, applicable to all corporations, all trustees, private or corporate; extending to creditors and stockholders, equally novel and alarming; it is my duty to notice and examine the question with the deliberation and research peculiarly necessary *434 from, its intrinsic importance, and the circumstances under which it arose and was considered ; it is equally my duty, to express the results of my judgment.