THE STATE (CAMDEN AND AMBOY RAILROAD AND TRANSPORTATION COMPANY, PROSECUTORS,) v. COMMISSIONERS OF MANSFIELD.

1. A corporation can purchase and hold lands only for such purposes as are authorized in their charter. The grant of corporate franchises, being restrictions of individual rights, will not be extended beyond the letter and spirit of the charter; yet it is not to be so strictly construed as to defeat the object of the grant: besides the powers expressly granted, such as are strictly incidental and necessary to the object of the grant are implied.

2. Depots, car and engine houses, tanks, repairing shops, houses for bridge and switch tenders, coal and wood yards, are *necessary* appendages to the operations of a railroad and transportation company, and their power to hold land for these purposes will be implied without an express grant in their charter; but lands for dwellings for employees, for car or locomotive factories, coal mines and matters of that kind, are things of convenience and not of necessity.

3. Where the charter of a railroad company enacts, after reserving certain imposts, "that no other tax or impost shall be levied or assessed upon the said company," this exempts from taxation all property held by them necessary to effect the purposes of their incorporation; other property held, being convenient (though not necessary) appendages to the road and its business, will not be exempt from taxation.

This was a *certiorari* sued out by the Camden and Amboy Railroad and Transportation Company, as prosecutors, to the commissioners of appeal of the township of Mansfield, in the county of Burlington. It returned the assessment of taxes upon the property of the company in that township for the year 1851. By the return and affidavits taken and admitted by counsel, it appeared that the taxes in dispute were assessed upon houses and lots owned by the company in that township, let by them to their workmen and employees. These lots were no part of the strip of land authorized to be taken and held by

The State v. Commissioners of Mansfield.

them for the purpose of constructing a railroad upon it. The question submitted to the court was, whether these houses and lots were exempt from taxation by the clause in the charter of the company exempting the " company from all further taxation."

The cause was argued before the CHIEF JUSTICE, and POTTS and ELMER, Justices, by *Field*, for the company, and *Vroom*, for the defendants.

*Field*, for plaintiffs.

These buildings and lots are held by the company for the purpose of effectuating the objects of their charter. They are the dwelling houses of the workmen employed upon, and necessary for carrying on the authorized business of the company. If the company have a right to hold them, they are, by the charter, free from taxation. If the company cannot hold them, *they* are not liable to taxation for them.

The cases decided in this court settle the question as to the property of the company being exempt from taxation. 2 *Harr.* 80, *The State* v. *Berry ;* 3 *Harr.* 11, *Camden and Amboy Railroad Co.* v. *Hillegas ; Ib.* 71, *Same* v. *Commissioners of Appeal.*

*Vroom*, for defendants.

This is a new question. This property is beyond the strip of 66 or 100 feet authorized to be held for the purpose of a railroad track, and is no part of any land held for a depot or station, or for any purpose of carrying on the business authorized by the charter.

There is no authority given to the company, in their charter, to hold this land ; perhaps they do not hold it legally. There surely is some limit to their power to hold land, and to exempt it from taxation.

The cases decided in this court do not appear to exempt from taxation any property, except what they are expressly authorized to hold or to take by power of eminent demesne. 4 *Metc.* 564, *Western Railroad Co.* v. *Worcester*, shows the limit fixed in Massachusetts.

POTTS, J. The property, upon which the assessment complained of in this case was made, consists of certain dwelling houses and lots of land in the township of Mansfield, owned by the Camden and Amboy Railroad and Transportation Company, situate near the line of their road, and used exclusively by workmen and mechanics in the employ of the company. The charter of the company, after making provision for the payment of transit duties, &c., enacts "that no other tax or impost shall be levied or assessed upon the said company." This clause has been construed to operate as an exemption of the property in the hands of the corporation, and the stock of the company in the hands of the stockholders, from any further taxation than that provided for in the charter. *State* v. *Branin*, and cases there cited.

But the question has not been distinctly raised in any case which has heretofore come before the court, as to what particular property belonging to the company is within the operation of the exempting clause; whether it embraces every kind and description of property of which the company may have become possessed, without reference to its location or the purposes for which it has been acquired or used, or is limited to such real and personal estate as it was necessary for the company to acquire and hold for the purposes for which they were incorporated. In the *State* v. *Berry*, 2 *Harr.* 80, it does not appear upon what property of the Paterson and Hudson River Railroad Company the tax complained of was assessed. The question there made was, whether the exemption in the charter applied to the *property* of the company or merely to the *franchise*. In the *Camden and Amboy Railroad Co.* v. *Hillegas*, 3 *Harr.* 11, not a word is said as to what property had been taxed. And although in the case of *Same plaintiffs* v. *Commissioners of Appeal*, 3 *Harr.* 71, it does appear that the tax objected to was assessed on "an acre of land and three buildings and lots" belonging to the company, yet it does not appear, by the report, where this property was located, nor whether it was a necessary appendage of the road or not; nor was that question raised in the cause at all, as far as we can learn. The same may be said of *Gardner* v.

*The State*, 1 *Zab.* 557. The particular question made in this cause is, then, for the first time before this court for adjudication.

This company, though created for public purposes, is technically a private corporation. The general power of "purchasing, or otherwise receiving and becoming possessed of, holding and conveying of real and personal estate," conferred on it by the second section of the charter, is a power limited to, and can only be exercised to effect the purposes for which it was conferred by the government. *Ang. & Ames on Corp. ch. 3, p. 59.* It is a part of the franchise; and the exercise of the corporate franchise being restrictive of individual rights cannot be extended beyond the letter and spirit of the act of incorporation. *Beatty* v. *Lessee of Knowles*, 4 *Peters* 152, 168. There is no doubt about the soundness of these general principles, the difficulty always is in applying them to the infinite variety of particular cases which arise in practice.

The Camden and Amboy Railroad and Transportation Company was incorporated for the specific purpose of perfecting an expeditious and complete line of communication from Philadelphia to New York. This was to be effected by constructing a railroad or roads from the Delaware river to Raritan bay, with all *necessary* appendages. And they were further authorized to enter into the business of transportation upon the said line. For this purpose they were empowered to purchase, or take by appraisement, the land and materials *necessary* to construct the road, and to provide the means of transportation between the cities of New York and Philadelphia; and they were limited, on the route of the road, to a strip of land not exceeding one hundred feet in width. Although grants of corporate powers are to be strictly construed, yet they are not to be so construed as to defeat the object of the grant; and hence all such powers, in addition to those expressly granted, as are strictly incidental and necessary to that object are implied. Power to construct a railroad, and establish transportation lines upon it, necessarily includes the essential appendages required to complete and maintain such a work and carry on such a business, as the power to erect and main-

tain suitable depots, car houses, water tanks, shops for repairing engines, &c., houses for switch and bridge tenders, coal or wood yards for fuel for the use of their locomotives, &c. And these are within the fair construction of the exempting clause, because they are necessary and indispensable to the operations of the company and the accomplishment of the objects of their charter. But there must be a limit somewhere to this incidental power of the company to enlarge its operations and extend its property without taxation under this exempting clause, and that limitation, I think, must be fixed *where the necessity ends, and the mere convenience begins.* The necessary appendages of a railroad and transportation company are one thing, and those appendages which may be convenient means of increasing the advantages and profits of the company are another thing. It might be advantageous for the company to purchase land, and to erect houses in the right location and of the right kind for all their constant employees, to establish factories for making their own rails, engines and cars, even to purchase coal mines and supply themselves with fuel; but these are not among the *necessary* powers of such a company.

In the case of *The Lehigh Coal and Navigation Co.* v. *Northampton county,* 8 *Wat. & Serg.* 334, it was held that, inasmuch as an incorporated canal was not taxable by the laws of Pennsylvania, not only the bed, berm bank, and tow path of the canal, but the lock houses and collectors' offices, were also exempt, these being considered as constituent parts of the canal, or necessarily incident thereto.

. In the case of *Railroad* v. *Berks county,* 6 *Barr.* 70, it was held that, as the railroad was exempt from taxation, water stations and depots, including the offices, oil houses, places to hold cars, &c., such places being necessary and indispensable to the construction and use of the road, were within the exemption; but that warehouses, coal lots, coal shutes, and wood yards, used or intended to be used as depots for merchandise, coal, wood, &c., for transportation, and machine shops for the manufacture of engines and cars, &c., form no part of the construction of the road; they are only indispensable to the profits to be made by the company, and are legiti-

mate subjects of taxation ; they are not appurtenant to the road, but to the business done upon it. This case is not precisely analogous to the one before us. The exemption applies not to a railroad and *transportation* company, but to the road only. It is referred to simply as showing the distinction taken between appendages which are absolutely necessary to carry into effect the objects of the corporation and such as are merely useful, convenient, and profitable for carrying on its business. Judge Jones, who delivered the opinion of the Court of Common Pleas in the above case, said, " Whilst it was clear that water stations and depots of the company are not subject to taxation, we cannot but come to a different conclusion with regard to that portion of the property which is occupied by the company for the manufacture, construction, and repair of the locomotives, cars, and other machinery used upon the railroad ; and that notwithstanding the case admits that it is necessary for the proper transaction of the business of the company. Certainly it is necessary that locomotives and cars should be manufactured, constructed, and repaired ; but the right to do all this is not necessary or incident to the making and maintaining of the railroad, the conveyance of passengers, and the transportation of the mails, and of goods, commodities and merchandise thereon." " The legislature never intended to add manufacturing privileges to the great ones already conferred upon this company. If the company may manufacture iron and wood into locomotives and cars for their own use, they may also manufacture rails, &c. ; and then, as iron and wood and coal are necessary to these purposes, the company may purchase iron mines and forests and coal mines, and may erect furnaces and forges and rolling mills ; and thus, under the interpretation of the charter here contended for, subtract a large amount of property from taxation, and become a gigantic manufacturing corporation." And, in reviewing the case in error in the Supreme Court, the court said, " in the case before us it is not enough that it is a convenient possession, or that it affords facilities in carrying on the business of the company"— " these erections and conveniences form no part of the road ; they are (only) necessary and indispensable facilities to increase the business on the road and to enable the company to make profits."

*The Inhabitants of Worcester* v. *The Western Railroad Corporation,* 4 *Metc.* 564, seems to be a well considered case. The court held that the railroad of this corporation was to be treated as a public easement, and, with the works necessarily incident to such public easement, to some extent at least was exempt from taxation. It was not only a railroad, but also a transportation company. It had authority to lay out a road five rods wide, and, for the purpose of cuttings, embankments, and procuring stone and gravel, to take as much more land as might be necessary for the proper construction and security of the road. The question was this: the company, in the town of Worcester, had erected a house for a passenger depot, a freight house, a car house, and an engine house, *partly within and partly without the railroad location.* The assessor assessed a tax on *all* these erections; the commissioners of appeal *abated* so much of it as was assessed upon buildings *lying within the five rods.* Of this the town of Worcester complained. The court, however, dismissed the complaint. "No doubt," said the Chief Justice, "in practice the main use of the strip of land of five rods in width in the greater part of its extent, will be for sustaining the track for the trains to pass over; but such restriction of its use is not found in the act, and therefore when the corporation have occasion to use any part of such strip of five rods for any of the purposes *incident to their creation* it is within their franchise; and being used to promote the purposes contemplated by the act, it is exempted from taxation as property appropriated to public use." And the Chief Justice added—"In addition to the power of taking lands for the construction and use of a railroad, the corporation are vested with the power of purchasing lands. The main object of granting this authority, we think, was to enable the corporation to enter into agreements with private proprietors for such lands as they might want to construct their road upon, so as not to be compelled to take it against the will of the owner under the provisions of the act. But though this was the leading purpose, the authority was not limited to that. It was general in its terms, and authorized the corporation, by purchase, to acquire a title to land beyond the limit of their location, which might be *convenient,* though *not necessary* to

the accomplishment of their object." But in that case the court held that such property would *not be exempt from taxation*.

Upon principle, we must affirm the assessment made by the assessor of the township of Mansfield. These dwelling houses and lots for the accommodation of the workmen of the company are not necessary appendages of a railroad or of a transportation business; they are convenient appendages, no doubt, but nothing more. Nor are they within the limits authorized to be appropriated by the company. The legislature, in exempting the company from all other taxes except the transit duties, only intended to include so much property as was necessary and essential to a railroad, and a transportation business, such as the corporation was created to construct and carry on.

The CHIEF JUSTICE and ELMER, Justice, concurred.

CITED in State v. *Flavell & Fredericks*, 4 *Zab.* 380 ; State v. *Ross*, 4 *Zab.* 503 ; State v. *Newark*, 1 *Dutch.* 316 ; State v. *Newark*, 2 *Dutch.* 523 ; *Wright* v. *Carter*, 3 *Dutch.* 86 ; *State Treas.* v. *Som. & Eas. R. R. Co.*, 4 *Dutch.* 27 ; State v. *City of Elizabeth*, 4 *Dutch.* 109 -110 ; State v. *Leester*, 5 *Dutch.* 542 ; State v. *Hancock*, 4 *Vr.* 317 ; *Cook* v. *State*, 4 *Vr.* 479 ; *State v. Gaffney*, 5 *Vr.* 132 ; State v. *Haight*, 6 *Vr.* 44 ; State v. *Hancock*, 6 *Vr.* 545 : State v. *Love*, 8 *Vr.* 62 , *State* v. *Collector, &c.*, 9 *Vr.* 273 ; *Black* v. *Del. & Rar. Can. Co.*, 7 *C. E. Gr.* 410.